UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED

99 SEP 15 PM 2:2⁀

N.D. OF ALABAMA

| | |
|---|---|
| MERRILL LYNCH, PIERCE, FENNER, & SMITH, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) Civil Action No. 99-S-2346-S ) |
| CHARLES W. KERN, | ) ) |
| Defendant. | ) |

ENTERED
SEP 15 1999

## MEMORANDUM OPINION

This action is before the court on plaintiff's motion for a preliminary injunction. On Friday, September 3, 1999, this court granted plaintiff's motion for a temporary restraining order and set this matter for a hearing, which was held on September 13, 1999. At the conclusion of the hearing, the court announced its decision granting plaintiff's motion for a preliminary injunction. The court also announced that a memorandum opinion would be entered by the court forthwith, detailing the relevant findings of fact and conclusions of law. This is the promised opinion of the court, and for the reasons stated herein, the court holds that defendant is due to be enjoined until such time as the court renders a decision based upon a final hearing on the merits.

## I. FINDINGS OF FACT

Defendant commenced his employment with Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill Lynch") on September 12, 1993, by signing an employment agreement containing certain restrictive covenants. That agreement provides, in pertinent part:

1. <u>All records</u>, whether original, duplicated, computerized, memorized, handwritten, or in any other form, <u>and all information</u> contained therein, including names, address, [tele]phone numbers, and financial information of any account, customer, client, customer lead or prospect ("Account"), are confidential and are the sole and exclusive property of Merrill Lynch. ... I will not use this information or remove any such records from the Merrill Lynch office except for the sole purpose of conducting business on behalf of Merrill Lynch. I agree not to divulge or disclose this information to any third party and under no circumstances will I reveal or permit this information to become known by any competitor of Merrill Lynch either during my employment or at any time thereafter.

   ...

2. If, at any time, I resign from Merrill Lynch, provoke my termination, or am terminated for cause, I agree that for a period of one year following my termination I will not solicit by mail, by [tele]phone, by personal meeting, or by any other means, either directly or indirectly, any Account whom [sic] I served or whose name became known to me during my employment at Merrill Lynch in any office and in any capacity. My agreement "not to solicit" means that I will not, during my employment and for a period of one year thereafter, initiate any contact or communication, of any kind whatsoever, for the purpose of inviting, encouraging or requesting any Account:

2

   (a) to transfer from Merrill Lynch to me or to my new employer, or
   (b) to open a new account with me or with my new employer, or
   (c) to otherwise discontinue its patronage and business relationship with Merrill Lynch.

3. I agree that at all times during my employment I owe Merrill Lynch a duty of loyalty and a duty to act in good faith. I agree that during my employment I will not individually, or in combination with any other employee or competitor of Merrill Lynch, violate or breach the terms of this agreement.

4. In the event I breach any of the covenants of paragraphs 1, 2 or 3, I agree that Merrill Lynch will be entitled to injunctive relief. ... Therefore, I CONSENT TO THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER or A PRELIMINARY or PERMANENT INJUNCTION ordering:
   (a) that I immediately return to Merrill Lynch all records whether original, duplicated, computerized, handwritten, or in any other form whatsoever, and that I be enjoined and restrained from using or disclosing any information contained in such records; and
   (b) that for a period of one year, I be enjoined and restrained from soliciting any Account whom [sic] I served or whose name became known to me while employed by Merrill Lynch, in any office and in any capacity; and
   (c) that I be further enjoined and restrained, for a period of one year, from accepting business from any Account who [sic] was solicited in violation of paragraph 2 or whose [sic] records and information was used in violation of paragraph 1.

  ...

8. I HAVE READ AND REVIEWED THIS EMPLOYMENT AGREEMENT AND RESTRICTIVE COVENANTS IN ITS ENTIRETY. I HAVE BEEN GIVEN AND OPPORTUNITY TO ASK MERRILL LYNCH QUESTIONS ABOUT IT. I HAVE ALSO BEEN GIVEN AN

3

> OPPORTUNITY TO CONSULT WITH AN ATTORNEY OF MY CHOICE. I FULLY UNDERSTAND THE TERMS OF THIS DOCUMENT AND KNOWINGLY AND FREELY AGREE TO ABIDE BY THEM.
>
> IN ADDITION TO THE FOREGOING, I UNDERSTAND THAT I HAVE AN ADDITIONAL THIRTY DAYS FROM THE DAY I SIGN THIS AGREEMENT TO CONTINUE TO REVIEW IT AND SEEK LEGAL COUNSEL. AT ANY TIME WITHIN THIS THIRTY DAYS, I MAY RESCIND THIS AGREEMENT BY DISCONTINUING MY EMPLOYMENT WITH MERRILL LYNCH WITHOUT ANY OF THE PROVISIONS HEREIN BEING ENFORCED AGAINST ME. TO THE CONTRARY, HOWEVER, IF I CONTINUE MY EMPLOYMENT WITH MERRILL LYNCH BEYOND SAID THIRTY DAYS, MY CONTINUATION OF EMPLOYMENT WILL CONSTITUTE MY RATIFICATION AND COMPLETE ACCEPTANCE OF THE TERMS OF THIS AGREEMENT.

(Plaintiff's Exhibit A, Preliminary Injunction Hearing (emphasis in original).)[1]

Prior to his employment with Merrill Lynch, defendant had no experience working in the securities industry. Merrill Lynch trained defendant extensively, paying the cost of his air fare and other expenses when defendant traveled to various national training classes. Additionally, Merrill Lynch paid the cost of defendant's annual registration fees with the New York Stock Exchange, National Association of Securities Dealers, American Stock Exchange, and two

---

[1] Defendant admits to signing the aforementioned agreement, but claims that he did not read the document completely before he signed it. The court, however, rejects defendant's assertion. First, defendant does admit that he was aware that Merrill Lynch sued other employees for violating the restrictive covenants contained in their employment contract. Moreover, defendant is a highly educated man, who possesses both a Bachelor of Science degree in electrical engineering and a Masters degree in cost analysis, and the court finds it highly unlikely that defendant failed to read his employment agreement.

4

state registries. Merrill Lynch also supplied defendant with research and administrative support and assisted him in obtaining new clients by providing him with a booth at various home and garden shows.

On January 8, 1999, defendant submitted a letter of resignation to Mr. Darby Henley ("Mr. Henley"), an employee of Merrill Lynch. Mr. Henley forwarded defendant's letter to Mr. David B. Quinty ("Mr. Quinty"), the resident Vice President of Merrill Lynch's Birmingham, Alabama complex and defendant's supervisor. Mr. Quinty met with defendant, and defendant expressed a desire to be promoted to management and to assume additional responsibilities. Mr. Quinty suggested that a management position would be available on July 1, 1999, in Merrill Lynch's Anniston, Alabama office, and that he would like to see defendant obtain that position. Neither Mr. Quinty nor defendant discussed defendant's employment agreement or the restrictive covenants contained therein. At the end of that meeting, defendant withdrew his letter of resignation. It is undisputed that defendant never missed a pay check as a result of his letter, his retirement benefits were not altered, and he retained all other fringe benefits, including health insurance.

On Thursday, September 2, 1999, Mr. Quinty was notified by his

5

administrative manager, who reviews outgoing e-mail, that defendant had e-mailed a list of all Merrill Lynch clients serviced by him, including the clients' social security and telephone numbers, to his home e-mail address. At the time of his e-mail, defendant had access to more than 400 Merrill Lynch accounts, representing more than 18 million dollars in assets, and generating over $265,000.00 in revenue for Merrill Lynch this calendar year. Thereafter, at approximately 3:00 p.m. on Friday, September 3, 1999, prior to the long Labor Day weekend, defendant submitted a letter of resignation directly to Mr. Quinty. Defendant informed Mr. Quinty that he had accepted a job with PaineWebber, Inc. ("PaineWebber"), a competitor of Merrill Lynch.  Indeed, defendant received a letter of understanding ("PaineWebber's contract") dated August 23, 1999, and accepted by defendant on August 31, 1999, from Jeffrey B. Gaskin, a branch manager of PaineWebber. In said contract, PaineWebber offered defendant a promotion to sales manager and promised to immediately pay defendant the sum of $110,814. That advance was not conditional on any performance by defendant.

After tendering his letter of resignation to Mr. Quinty, defendant removed personal items from his cubicle and left the building at approximately 3:30 p.m. Defendant immediately went to the offices of PaineWebber and called approximately five clients.

Additionally, defendant took approximately four to six inches of documents, containing private information regarding the clients he serviced at Merrill Lynch, and gave the documents to PaineWebber employees. PaineWebber used the documents to generate a mass mailing to all of defendant's customers from Merrill Lynch. All of the letters prepared by PaineWebber were signed by defendant and included transfer forms, with the customer information pre-completed, providing for a more efficient transfer process. Additionally, in spite of the temporary restraining order entered by this court at approximately 5:27 p.m. on the day of defendant's resignation, said correspondence was postmarked on September 3, 1999.

## II. CONCLUSIONS OF LAW

A party seeking a preliminary injunction must establish the following factors: 1) a substantial likelihood of success on the merits; 2) a threat of irreparable injury; 3) that the threatened injury to plaintiff outweighs the injury to the nonmovant; and 4) that the injunction would not disserve the public interest. *See Tefel v. Reno*, 180 F.3d 1286, 1295 (11th Cir. 1999). Additionally, a court granting a preliminary injunction must ensure that the requirements of Fed. R. Civ. P. 65(d) have been satisfied, namely that the injunction "shall be specific in terms; [and] shall

7

describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained." Fed. R. Civ. P. 65(d). In other words, "an ordinary person reading the court's order should be able to ascertain from the document itself exactly what conduct is proscribed." *Hughey v. JMS Development Corp.*, 78 F.3d 1523, 1531 (11th Cir. 1996).

## A. Likelihood of Success on the Merits

Generally, in Alabama, nonsolicitation agreements and covenants not to compete are restraints against trade and, therefore, are enforceable only if they fall within the exceptions enumerated in Ala. Code § 8-1-1(b) (1975). *See Sevier Insurance Agency, Inc. v. Sillis Corroon Corporation of Birmingham*, 711 So. 2d 995, 998 (Ala. 1998) (holding that there is no longer any need to classify employee agreements either as covenants not to compete or as nonsolicitation agreements because § 8-1-1 applies to both agreements). Section 8-1-1(b) provides:

> One who sells the good will of a business may agree with the buyer and one who is employed as an agent, servant or employee may agree with his employer to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a specified county, city, or part thereof so long as the buyer, or any person deriving title to the good will from him, or employer carries on a like business therein.

Ala. Code § 8-1-1(b). If a contract is restricted properly as to

8

territory, time, and persons, and if it is supported by sufficient consideration, it should be upheld under § 8-1-1 as a mere partial restraint of trade. See Sevier Insurance Agency, Inc., 711 So. 2d at 999 (internal citations omitted).

After reviewing the employment agreement signed by defendant, the court finds that defendant's employment agreement is included within the exceptions contained in Section (b) and is, therefore, enforceable. Specifically, defendant's agreement prohibits him only from soliciting any person whose account he serviced, or whose name became known to him, while defendant was employed by Merrill Lynch; it does not prohibit him from acquiring new clients for PaineWebber that have no connection with his previous employment at Merrill Lynch. Moreover, said agreement is reasonable in duration, one year, and merely provides Merrill Lynch with an amount of time in which it may renew its relationships with its customers via a new broker.

Having found that Merrill Lynch's agreement is enforceable, the court must next consider whether plaintiff is substantially likely to succeed on its breach of contract claim. At the outset, the court rejects defendant's argument that his employment contract was no longer in effect at the time he resigned his employment in September of 1999. Specifically, defendant argues that a new

9

employment contract was created when he tendered his letter of resignation in January of 1999. However, the court disagrees with defendant for the following reasons. First, the court finds that defendant never effectively resigned in January of 1999. Although defendant submitted a letter of resignation to Mr. Henley, Mr. Henley was not authorized to accept that letter. Additionally, defendant withdrew his resignation letter after his conversation with Mr. Quinty, and the purported "resignation" had no effect on any of defendant's employment benefits with Merrill Lynch. Accordingly, the court finds that defendant's September 1993 employment agreement was valid and enforceable at the time of his September 1999 resignation.

The court further finds that plaintiff has substantially proven that defendant breached his September 1993 employment agreement. Specifically, defendant admits that he signed the employment agreement. Defendant further admits that by signing said agreement, he promised not to solicit Merrill Lynch customers after the termination of his employment. Defendant also admits that he solicited Merrill Lynch customers just hours after he resigned his employment with Merrill Lynch, including telephone calls and a mass mailing sent to all of the clients he previously serviced. Defendant further admits that he removed, both

10

physically and electronically, Merrill Lynch customer lists, containing confidential customer information, in violation of his employment agreement. Therefore, the court concludes, based on defendant's admissions, that defendant breached his employment contract on numerous occasions and that this factor also weighs in favor of granting a preliminary injunction.

**B. Irreparable Harm**

The court also finds that Merrill Lynch will suffer irreparable harm and injury without the issuance of this preliminary injunction. Specifically, defendant admitted that, prior to the issuance of this court's temporary restraining order, he contacted Merrill Lynch customers in violation of his employment agreement. The court is certain that, without the aid of this injunction, defendant would again violate the terms of his employment agreement. Additionally, the court notes that defendant serviced a sizeable portion of Merrill Lynch accounts, with a consolidated value of more than $18 million in assets, and that the transfer of said assets to PaineWebber would undeniably injure Merrill Lynch. As the Fourth Circuit adeptly noted:

> When an account executive breaches his employment contract by soliciting his former employer's customers, a nonsolicitation clause <u>requires immediate application</u> to have any effect. An injunction even a few days after solicitation has begun is unsatisfactory because the

11

> damage is done. The customers cannot be "unsolicited."
> It may be impossible for the arbitral award to return the
> parties substantially to the status quo ante because the
> prevailing party's damages may be too speculative.

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley*, 756 F.2d 1048, 1054 (4th Cir. 1984) (emphasis added). Plainly speaking, Merrill Lynch trained defendant at considerable expense and now seeks to prevent him "from tilling the coffers of a competitor by virtue of Merrill Lynch's efforts." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Stidham*, 658 F.2d 1098, 1101 (5th Cir. Unit B, 1981).[2] Unless defendant is enjoined, Merrill Lynch will be irreparably harmed by the diversion of Merrill Lynch accounts and commission revenues.

### C. Threatened Injury to Plaintiff Outweighs Injury to Defendant

The court further finds that the third factor weighs in favor of granting plaintiff's motion for a preliminary injunction. As the court has previously noted, Merrill Lynch stands to lose considerable assets if defendant is allowed to solicit Merrill Lynch customers in violation of his employment agreement. Furthermore, the resulting harm to defendant, while not insignificant, arises simply from requiring him to fulfill his

---

[2] Decisions of the former Fifth Circuit rendered prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit. See *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

12

contractual obligations. Additionally, said injunction does not prohibit defendant from working as a broker for PaineWebber; defendant may still obtain new customers for PaineWebber, so long as they do not arise out of his employment with Merrill Lynch. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Kramer*, 816 F. Supp. 1242, 1248 (N.D. Ohio 1992) (noting that "[t]here is nothing in the agreement which prohibits [defendant] from continuing his occupation as a broker in the securities industry."). Hence, the court finds that the threatened injury to Merrill Lynch outweighs the harm to defendant.

### D. Public Interest

Finally, an issuance of an injunction will not disserve the public interest. Specifically, the court finds that it is in the public interest to ensure the enforcement of valid contracts and to guarantee the confidentiality of private investment information. Indeed, after receiving a solicitation letter from defendant, one of Merrill Lynch's current customers complained because defendant had obtained confidential information from Merrill Lynch records, including her social security number, home address, account number, and the value of her investments.

### III. CONCLUSION

Based on the foregoing discussion, the court finds that

13

plaintiff has established the four requirements for the issuance of a preliminary injunction, and that plaintiff has no adequate remedy at law. Accordingly, the court concludes that plaintiff's motion is due to be granted. The court reminds defendant that should he, or anyone acting in concert with him (specifically including any officer, agent, servant, employee, or attorney of his present employer), disregard this injunction and solicit or accept an account transfer from any of defendant's prior Merrill Lynch customers, then upon application to the court by opposing counsel, sanctions shall be swift in coming and painful upon arrival. An order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this 15th day of September, 1999.

_____
United States District Judge

14